McCORD, Chief Judge.
This appeal is from a summary final judgment based upon a finding by the trial court in a quiet title suit below that “the claim of the plaintiffs is barred by applicable statutes of limitation.” We reverse.
Appellants (plaintiffs below) are the four children of Ernest Leslie Norred (hereafter referred to as Norred) who died on August 8,1973. Norred was declared insane by the county judge in and for Escambia County, Florida, on February 23, 1941, at which time the oldest appellant was five years old and the youngest not yet born. Norred was committed to the Florida State Hospital where he remained until his death. His ■sanity was never judicially restored, and according to his brothers and sisters, he in fact never regained his competency. Norred’s wife divorced him in 1944, and in 1948 she moved with the appellants from Pensacola, Florida, to Houston, Texas.
Norred and his brothers and sisters inherited from their father certain real estate (the subject of this litigation) comprising approximately 60 acres located in Santa Rosa County, Florida. Some of the brothers and sisters conveyed their interest in the property to the others so that in 1963, the property was owned by four of the brothers and sisters, one of these being Norred, who as aforesaid had been adjudicated a mental incompetent and committed to the Florida State Hospital. Norred owned a %2 interest in the property.
Norred’s brothers and sisters decided to sell the real estate, and because of title questions, it was necessary to institute a quiet title suit (a previous suit to the case sub judice) and appoint a guardian for Norred. His brother Carl was appointed guardian of his property in proceedings in the County Court of Escambia County on December 7, 1962. Carl was duly qualified and received letters of guardianship and was thus a party to the quiet title suit both individually and as Norred’s guardian. Carl’s petition for appointment as guardian listed the persons most closely related to Norred as certain of his brothers and sisters but did not mention his four children, the appellants, who were all adults by this time. Appellants were thus not served with formal notice of the guardianship proceeding. Three of them had been notified of the proposed sale of the property by letter dated November 19, 1962, from the attorney employed by Carl to represent him in connection with his appointment as guardian. He advised the children that it was necessary to appoint a guardian of their father’s property and that the sale of the property at a favorable profit was under consideration by their father’s brothers and sisters, who together owned ^ of the property. The children were advised by the letter that a sale of their father’s %2 interest would be approved by the county judge; that his brother Carl would be appointed guardian; that any funds expended from the estate of Norred would be solely for Norred’s benefit and that Carl was an honest and straightforward person who would protect the property interest of Norred. The children were also advised to notify either the attorney or the county judge of any objections they had to the appointment of Carl as guardian and to advise the attorney of any comments they might have concerning the subject matter of the attorney’s letter. The attorney received no communication from them.
A petition for leave to sell the property of Norred was prepared and signed by Carl, and a proposed order of sale was also prepared. A suit to quiet title was consummated, and the property was conveyed by Carl in his own behalf and as guardian for Norred and by Norred’s other brothers and sisters. The petition signed by the guardian seeking the court’s approval of the sale was never filed and thus no court approval was obtained.
Upon Norred’s death, three of his children came to Pensacola for his funeral. The sale of the property was discussed with them after the funeral and Carl explained that Norred’s proceeds from the sale were needed to pay his funeral and burial expenses to which the children agreed. They contend, however, that they were not aware of the sale of their father’s interest in the *1043 property until they came to Pensacola for his funeral. Later, on December 31, 1975, the children filed the complaint in this cause to quiet title contending that the conveyance by Carl, as guardian of their father’s interest in the property, was void and that title to his former interest is in them as his sole heirs.
§ 745.05, Florida Statutes (1963), which was in effect at the time of the sale of the property, states as follows:
“Sale. — When the guardian of the property deems it expedient, necessary, or for the best interest of the ward for part or all of the property to be sold, he may sell at public or private sale, but no title shall pass until the sale is authorized or confirmed by order of the county judge; .” (Emphasis supplied.)
It is under this statute that appellants contend no title passed to the grantees and that title remains in them as Norred’s sole heirs. Appellees contend and the trial court ruled that appellants’ suit is barred by certain statutes of limitations. The first of these is § 95.12, Florida Statutes, which provides as follows:
“No action to recover real property or its possession shall be maintained unless the person seeking recovery or his ancestor, predecessor, or grantor was seized or possessed of the property within 7 years before the commencement of the action.”
On its face, the foregoing statute would appear to bar appellants’ action to quiet title since nearly 16 years passed between the time the cause of action for recovery of the property accrued in the ward and the filing of this suit by the ward’s heirs (appellants). Another statute must be considered, however, and it is § 95.20(1), Florida Statutes (1973) [repealed by Ch. 74-382, Laws of Florida, but with a savings clause contained in § 95.022, Florida Statutes (1975), which would be applicable to this cause of action]. Section 95.20(1), Florida Statutes (1973), provides in pertinent part as follows:
“If a person entitled to commence any action for the recovery of real property, . be, at the time such title shall descend or accrue, either:
(a) • • •
(b) insane; or
(c) . . .
The time during which said disability shall continue shall not be deemed any portion of the time in this chapter limited for the commencement of such action, but such action may be commenced, . . . within the period of seven years after such disability shall cease, or after the death of the person entitled who shall die under such disability; but such action shall not be commenced, . . . after that period.”
Norred’s disability continued until his death, and this action was brought within seven years thereafter. Appellees contend, however, that § 95.20(1) should not be held to apply to an insane person for whom a guardian has been appointed. We disagree. Although we have not found specific authority on this point in Florida, the general rule in other jurisdictions seems to be that the appointment of a guardian for a mentally incompetent person does not start the running of the period of limitation, although there is an exception to this rule in some jurisdictions where the right of action is considered to be in the guardian rather than in the incompetent. See Annotation, 86 A.L.R.2d 965 (1962). In the case sub judice, it was the guardian who attempted to convey the ward’s interest in the property to third persons without court approval. Under these circumstances, it would be unjust to rule that the guardian’s failure to bring an action to rescind his deed should be charged to his ward. To engraft into the statute an exception which the legislature did not see fit to itself put in the statute would amount to judicial legislation.
Additionally, appellees contend that § 95.20 did not toll the running of the statute of limitations in favor of Norred because it requires, by its terms, that the asserted disability had been in existence at the time title vested in the person claiming the disability. This contention, however, flies in the face of the construction placed by the Supreme Court on a predecessor statute to § 95.20, which in all material *1044 respects to the point here involved is identical with § 95.20. There, the Supreme Court in Gillespie v. Florida Mortgage & Investment Co., 96 Fla. 35, 117 So. 708 (1923), stated as follows:
“The disabilities that prevent the running of the statute of limitations in actions to recover real property as stated in the statute are infancy, insanity, and imprisonment; and the disability must exist at the time the title descends or the right of action accrues. This is the intent and meaning of the statute. By the terms of the statute the action may be commenced within the period of seven years after the disability shall cease, or after the death of the person entitled who shall die under such disability; but such action shall not be commenced after that period.” (Emphasis supplied.)
We,. therefore, conclude that this action is not barred by § 95.12, Florida Statutes, as modified by § 95.20(1), Florida Statutes (1973).
Appellees also rely upon § 95.21, Florida Statutes, to defeat this action. That statute provides in pertinent part as follows:
“The title of any purchaser, or his assigns, who has held possession for 3 years of any real . . . property purchased at a sale made by an executor, administrator, or guardian shall not be questioned because of any irregularity in the conveyance or any insufficiency or irregularity in the court proceedings authorizing the sale, whether jurisdictional or not. The title shall not be questioned at any time by anyone who has received the money to which he was entitled from the sale . . . ” (Emphasis supplied.)
Appellees contend that the defect of failure to obtain court approval of the sale is cured by the above statute. We disagree. The portion of the above statute which we have underlined cures any insufficiency or irregularity in the court proceedings authorizing the sale, but here there were no court proceedings authorizing the sale. Thus, this provision of the statute has no applicability to this sale. As to the further provision that title shall not be questioned at any time by anyone who has received the money to which he was entitled from the sale, here appellants who are questioning this title have received no money from the sale.
Appellee next contends that this action is barred by § 95.22, Florida Statutes (1975).
“Limitation upon claims by remaining heirs, when deed made by one or more.—
(1) When a person owning real property or any interest in it dies and a conveyance is made by one or more of his heirs or devisees, purporting to convey, either singly or in the aggregate, the entire interest of the decedent in the property or any part of it, then no person shall claim or recover the property conveyed after 7 years from the date of recording the conveyance in the county where the property is located.
(2) This section shall not apply to persons whose names appear of record as devisees under the will or as the heirs in proceedings brought to determine their identity in the office of the judge administering the estate of decedent.” (Emphasis supplied.)
Upon the death of Norred’s father, the administrator of his father’s estate filed a petition in the County Judge’s Court of Santa Rosa County, Florida, in connection with such administration listing all heirs, including Norred. Thus, Norred appeared of record as an heir in a proceeding brought to determine the identity of the heirs of his father for purposes of distribution of his estate, which included the property in question. Referring to subsection (2) of § 95.22 above, it is readily seen that § 95.22 specifically does not apply to the conveyance of this property by the heirs of Norred’s father.
The summary final judgment in favor of appellees is reversed, and the cause is remanded for further proceedings.
BOYER and ERVIN, JJ., concur.